HADLEY BROS.-UHL COMPANY, A CORPORATION, AND HARMON L. HADLEY, RESPONDENTS, v. OREON E. SCOTT AND OREON E. SCOTT, TRUSTEE, APPELLANTS.—53 S. W. (2d) 1070.

St. Louis Court of Appeals. Opinion filed November 8, 1932.

Rehearing denied November 23, 1932.

Grant & Grant for appellants.

Holland, Lashly & Donnell and George F. Wise for respondents.

BENNICK, C.—This is a suit for an injunction to restrain defendant, as trustee, from selling certain real estate at public sale under a power given by the deed of trust upon the property.

The plaintiffs, who are the grantors in the deed, are Hadley Bros.-Uhl Company, a corporation, and Harmon L. Hadley, one of the officers and principal owners of the company. Defendant, Oreon E. Scott, is engaged in the real estate and loan business, and is named in the suit in his individual as well as in his fiduciary capacity.

Some months prior to March 31, 1924, plaintiffs had had negotiations with defendant relative to his placing of a loan of $55,000 on their real estate, and on the date mentioned, formal application for the loan was made to defendant, the application containing, among other things, the following provision:

"Will keep the building satisfactorily insured in the sum of $55,000 against fire loss and $30,000 against wind loss, with policies payable in case of loss to the Trustee named in said Deed of Trust, it being further agreed that you are to have the renewal of any policies expiring during the period of this loan."

We quote the above provision in the application relating to the right of the trustee to have the renewal of any insurance policies expiring during the period of the loan, since his right and power to have controlled the placing of insurance goes to the heart of the controversy between the parties in this proceeding.

The application for the loan was eventually accepted, and on April 15, 1924, a deed of trust securing the same, and designating defendant as trustee, was duly executed by plaintiff Harmon L. Hadley on behalf of the company. The indebtedness was evidenced by 110 negotiable promissory notes, each for the sum of $500, maturing at stated intervals, and bearing interest from maturity at the rate of eight per cent per annum. Attached to each of said notes were semiannual interest coupons, serially numbered to correspond with the notes to which they were respectively attached, and designed to cover the interest on the principal of each note from its date until its maturity at the rate of six per cent per annum. The reason for the issuance of the series of notes in moderate denominations was that the several units of the loan were to be sold by defendant to the public generally, the principal notes being in effect the equivalent of bonds.

The instrument was drawn in consideration of the debt and the trust thereinafter mentioned and created, and it described the property contained and the indebtedness secured. Other portions of the deed of trust, material to the controversy at hand, were as follows:

"And for the purpose of further securing the notes and coupons above described, it is agreed by and between the party of the first part (plaintiffs), . . . and said party of the second part (defendant), . . . , as follows:"

. . . . . . .

"Third: The said party of the second part herein is hereby authorized to place and keep up at the expense of the party of the first part, insurance against fire and lightning upon the building and improvements of said premises in one or more solvent insurance companies in the sum of Fifty-five Thousand ($55,000) Dollars, and also against windstorms, tornadoes and cyclones in the sum of Forty Thousand ($40,000) Dollars; also against boiler explosions in the sum of Twenty Thousand ($20,000) Dollars and liability insurance in the sum of Ten Thousand ($10,000) Dollars and Twenty Thousand ($20,000) Dollars limits. Said policies to be assigned to the said Oreon E. Scott, his successor or successors, who shall have full power and authority to collect and receive any and all moneys payable thereunder and to apply the same toward the debt secured hereby, unless same shall be otherwise discharged or the Trustee may at his option apply the same toward the repair or restoration of the property so damaged in such manner as the Trustee may elect. And in the event said proceeds of said insurance policies should be appropriated by said Oreon E. Scott, or his successors to the satisfaction of the debt secured hereby, the same shall be applied pro rata upon each of said principal notes in the same manner as if said moneys had been derived from a sale of the property for a default in the performance of this instrument."

. . . . . . .

"Fifth: And it is further covenanted and agreed between the parties hereto that in the event any of the covenants and agreements herein set forth or any part or portion thereof shall not be fully kept or performed, then said Oreon E. Scott, or his successors may at his option pay the taxes in arrears or pay for any insurance or pay any judgment or advance any and all sums of money necessary to protect the title or possession of said premises and all such money so expended shall be a new and additional principal sum of money secured by this instrument, and shall be payable on demand and may be collected with interest thereon at the rate of eight per cent (8%) per annum, from the time of so expending same."

. . . . . . .

"Now, therefore, if the said Harmon L. Hadley, or anyone for him shall well and truly pay off and discharge the debt and interest expressed in said notes and every part thereof, when the same shall become due and payable according to the true tenor, date and effect of said notes, and shall well and truly keep and perform all and singular the several covenants and agreements hereinbefore set forth, then this trust shall cease and be void, and the property herein conveyed shall be released at the cost of the party of the first part; but if said debt or said interest, or any part thereof, be not so paid when the same or any part thereof shall become due and payable according to the true tenor, date and effect of said notes, or if default be made in due fulfillment of said covenants and agreements, or any one of them, this conveyance shall remain in full force and said party of the second part, or his successor or successors in this trust may proceed to sell the property conveyed or any part thereof, at public vendue . . . and shall receive the proceeds of such sale and the said Trustee shall, out of the proceeds of such sale pay first the cost and expense of executing this trust, including legal compensation to the Trustee for his services, and next he shall repay all moneys with interest as aforesaid, which may have been advanced and expended by said Oreon E. Scott, or his successor or successors or holders of the notes hereby secured, as hereinbefore provided and next such of said interest coupons as are then due according to their face and all accrued interest thereon, and next, if enough therefor all of said principal notes, whether due on their face or not, and if not enough therefor, then apply the same pro rata to the payment of said principal notes, and if any such proceeds remain after the full satisfaction and discharge of all the above items, the same shall be paid to the party of the first part, his heirs, assigns, administrators or executors."

. . . . . . .

"Said Grantor hereby further agrees that any interest the said Oreon E. Scott may have or may acquire in the debt secured hereby shall not interfere with nor prevent his acting hereunder as Trustee and expressly waives any objections to said Oreon E. Scott having or acquiring any such interest in the debt or property aforesaid or continuing thereafter as Trustee herein."

Following the execution of the deed of trust, defendant took assignments of the insurance policies then outstanding on the property, and at their expiration placed other insurance as provided by the terms of the agreement. Defendant was not an agent for any insurance company, but he did have a broker's license, and placed the insurance as a broker with the several insurance companies. The firm of which he was a member received commissions on the business, which were concededly retained by it.

The policies secured by defendant were made payable to him as trustee, as his interest might appear, and upon their issuance he paid the premiums and then billed plaintiffs, who would reimburse him for the sums so expended. Eventually, at plaintiffs' request, he arranged the several forms of insurance so that all the policies expired on the same date. The testimony was that in placing the insurance it was the security of the indebtedness, and not the commissions, which defendant had in mind.

Affairs between plaintiffs and defendant proceeded satisfactorily, all as agreed upon under the terms of the deed of trust, until June 23, 1925, when plaintiffs notified defendant by letter that they would no longer recognize his right under the deed of trust to place the insurance, but that they would thereafter secure their own insurance. To such proposed change of procedure defendant refused to agree, but instead continued to place the insurance on the property, notifying plaintiffs in each instance, and billing them for the amounts of the premiums paid out by him. Following the date mentioned, and notwithstanding defendant's refusal to accede to the attempted revocation of his power to place the insurance, plaintiffs secured policies on their own account, and continued to do so until the time of the trial of the cause in the court below.

There was a great deal of controversy at the trial of the case in regard to whether any or all of the policies secured by plaintiffs contained a mortgage clause making the loss payable to defendant as trustee as his interest might appear, or only a mortgage-waiver clause. The first lot of policies which were secured by plaintiffs immediately after their attempt to revoke defendant's power to place the insurance were tendered to him and returned by him to plaintiffs, not only because of their insufficiency in form with respect to the mortgage clause, but also because of his unwillingness to recognize plaintiffs'

claim to the right to place the insurance themselves. The remaining policies taken out by plaintiffs were not exhibited to defendant, though there was an offer made by counsel to tender them at the trial.

Not only did plaintiffs at all time refuse to reimburse defendant for the premiums advanced by him on policies secured after June 23, 1925, but in October, 1929, they fell into default in making the monthly deposits called for by the deed of trust, which were designed to make money available to the trustee to meet the semiannual payments on the principal indebtedness. Finally, on January 23, 1930, defendant, as trustee, under the power given him by the deed of trust, advertised the premises for sale on account of plaintiffs' default in their monthly deposit payments, and also on account of their failure to have reimbursed him for advancements made for insurance premiums, which, under the terms of the deed of trust as they have heretofore appeared, had become a part of the principal debt secured. Plaintiffs thereupon paid up the monthly deposits in arrears, but continued to refuse to reimburse defendant for the amount of the premiums advanced by him, and in due course instituted the present suit to enjoin defendant from selling the property under the deed of trust.

In their petition plaintiffs alleged that they had fully and completely performed each and every provision, covenant, promise, and obligation of the deed of trust incumbent upon them; that they had punctually made all payments required by the deed of trust; that they had kept the premises insured, as required by, and in the amounts mentioned in, the deed of trust, and had tendered the policies embodying said insurance to defendant; that they had proffered him an assignment of such policies, with full power and authority to collect moneys payable thereunder and to apply the same towards the debt secured by the deed of trust; that defendant had wrongfully refused to accept the policies or the assignment; that whatever authority defendant had had to place the insurance for plaintiffs' account had been canceled and revoked by them on June 23, 1925; that defendant had refused to receive or hold said policies as trustee upon the ground that he individually was entitled to place the insurance and obtain the commissions allowed by the companies issuing the policies; that he thereafter undertook to administer the trust for his own individual profit and benefit; and that defendant, purporting to act as trustee under the deed of trust, but in fact acting for his own personal and individual interest, and for the purpose of compelling plaintiffs to allow him to obtain commissions from insurance companies, had commenced proceedings to foreclose under the deed of trust, although defendant well knew that plaintiffs were not in default under said deed of trust or in any other particular.

The prayer was that the court should adjudge and decree that plaintiffs had fully and completely complied with the provisions of the deed of trust, and that they were not in default thereunder; that defendant be enjoined and restrained from taking any action to foreclose the rights and interest of plaintiffs in and to said property; that a temporary restraining order be issued pending the hearing of the case on the merits; and for such other and further orders and decrees as to the court should seem meet and proper.

The restraining order was issued as prayed, and defendant's return in the nature of a demurrer overruled, whereupon he filed his answer and counterclaim, setting up the several provisions of the deed of trust providing that defendant as trustee should place and keep up the insurance at the expense of plaintiffs; that if plaintiffs did not pay for such insurance placed by defendant, then he, at his option, might pay for such insurance, and all moneys so expended by him would be considered as, and would become, an addition to and a part of the principal debt secured by said deed of trust; that if default should be made in the payment of the debt secured by said deed of trust, or any part thereof, when due and payable, or in the due fulfillment of the covenants and agreements as stated in the deed of trust to be performed by plaintiffs, then defendant might proceed to sell the property; that the power conferred upon defendant to place and keep up the insurance was irrevocable on the part of plaintiffs; and that pursuant to such power, he had from time to time placed new insurance and had paid the premiums therefor, for which plaintiffs had refused to reimburse him though demand for payment had been made.

Having pleaded a compliance on his part with all the terms and provisions of the deed of trust, together with plaintiffs' default thereunder, defendant prayed that plaintiffs' bill be dismissed, and by way of counterclaim prayed judgment against plaintiffs in the sum of $992.60, representing the amount expended by defendant for premiums for insurance purchased on plaintiff's account.

The reply was in the conventional form.

Upon a hearing of the cause, the court found that plaintiffs were not in default at the time of the institution of this suit; that defendant's attempted foreclosure was unwarranted; and that plaintiffs were not obligated or indebted to defendant, either personally or as trustee, for any advancements or disbursements for or upon plaintiffs' account. The court thereupon found the issues in favor of plaintiffs, both upon their cause of action and upon defendant's counterclaim, and ordered, adjudged, and decreed that the temporary restraining order theretofore issued be made permanent, and that defendant be forever enjoined from foreclosing or further attempting to foreclose the rights of plaintiffs as for any default or defaults un-

der the deed of trust alleged to have occurred prior to the institution of this suit.

Following the entry of such judgment, a motion for a new trial was filed and overruled, and in due course the case has been brought to this court on defendant's appeal.

Defendant argues that the court was in error in finding the issues for plaintiffs and against him, and we cannot escape the conclusion that the point is well taken.

The power conferred upon defendant to place and keep up the insurance, which is the bone of contention between the parties, was not void as against public policy or for any other reason. It was a power given by contract, entered into between persons fully capable of contracting; and there was nothing about it which naturally tended to cause unfaithful conduct on the part of the trustee, or to wrong or defraud those whose interests he had in charge. The right of the mortgagee to take out insurance for the protection of his security is always recognized, and it is but a step farther to say that he may have the sole right to place and keep up the insurance upon both his and the mortgagors' interests if the parties themselves mutually agree thereto.

We are not unaware of the general doctrine that a trustee in a deed of trust is the agent both of the debtor and of the creditor; that his duties must be performed with the utmost impartiality and integrity; and that he cannot use the property which he holds in trust, or his relation to it, for his own personal benefit, advantage, or gain. But such doctrine has no application to the facts of the case at bar, for the rule is one which may be and was abrogated and waived by the provision in the deed of trust conferring an express power upon the trustee which contemplated his making a profit for himself. [39 Cyc. 298, and cases cited.]

Here plaintiffs, in their application for the loan, agreed that defendant should have the renewal of any policies expiring during the period of the loan, and the identical provision was embodied in the deed of trust itself. Obviously the chief concern of plaintiffs was the security of their property, and of defendant and the holders of the notes the security of the loan. All this was accomplished through the placing of the insurance by defendant; and there was nothing antagonistic between that power and the duties and responsibilities he owed to his principals, and no profits were thereby diverted from the beneficiaries. Conceding, therefore, that defendant, in placing the insurance, as a consequence of his status as a broker was put in a position to make and retain certain commissions, the provision of the deed of trust so empowering him was not thereby rendered invalid, since everything that was done and contemplated was open and above board, upon a full disclosure of all the facts and circumstances, with a total absence of undue advantage accruing to defendant out of his

fiduciary relationship. [Brooker v. William H. Thompson Trust Co., 254 Mo. 125, 162 S. W. 187; Bent v. Priest, 10 Mo. App. 543; 41 C. J. 412.]

The ultimate question, therefore, is whether the power so given, and otherwise valid, was a mere naked power, revocable at the will and pleasure of plaintiffs. We think not. It is said in 49 C. J. 1255-1256, upon the authority of numerous cases, that "where a power is coupled with an interest, or is given for a valuable consideration, or as security, it is irrevocable." That is exactly the situation here, and so the parties themselves must have regarded the situation when the power in question was conferred. The deed was executed in consideration of the debt and the trust created; it expressly recited that the particular power conferred upon the trustee, along with his other powers, was given "for the purpose of further securing the notes and coupons" theretofore described therein; and further in the instrument plaintiffs in plain terms agreed that any interest defendant might acquire in the debt secured should not interfere with nor prevent his acting as trustee. In other words, defendant's interest with which the power was coupled was not in the commissions which followed the exercise of the power, but rather it lay in the security of the debt itself.

Moreover the power so granted to the trustee strikes us as having been a very reasonable one. It is to be borne in mind that the units of the loan were to be sold in small denominations to the buying public generally, and under such circumstances that the insurance policies could not be assigned to and deposited with the individual holders of the notes. In purchasing the notes it was obviously to defendant and his firm that the investors looked for security, and upon their business reputation for integrity and fair dealing depended the readiness with which the notes could be sold. In other words, the public looked to defendant to see that every precaution had been taken to secure, not only the prompt payment at maturity of the money loaned to plaintiffs, but also the prompt payment of any damage accruing by reason of any of the risks insured against. They were naturally interested in having the insurance placed in solvent companies which paid their losses fairly and promptly; in seeing to it that the insurance was not allowed to lapse; and for all of this they must have looked primarily to the one with whom they made their investments. The lower court rejected defendant's offer of proof along all such lines, but the conclusions stated seem to us to follow obviously even in the absence of proof.

We do not understand that plaintiffs are questioning the sufficiency of the steps taken by defendant looking to the foreclosure under the terms of the deed of trust, or the correctness of the items for advancements by way of premiums on policies of insurance secured

after the date of the attempted revocation of the power to place the insurance.

It follows that the judgment of the circuit court should be reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed, and the cause remanded, in accordance with the recommendations of the Commissioner. *Haid, P. J.*, and *Becker, J.*, concur; *Daues, J.*, not sitting.